# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **SHERELLE HEARD MOSTELLA,** | } |
| | } |
| Plaintiff, | } |
| | } |
| v. | } |
| | } Case No.: 4:17-cv-01149-ACA |
| **SOCIAL SECURITY** | } |
| **ADMINISTRATION,** | } |
| **COMMISSIONER,** | } |
| | } |
| Defendant. | } |

## **MEMORANDUM OPINION**

Plaintiff Sherelle Heard Mostella appeals the decision of the Commissioner of Social Security denying her claims for a period of disability and disability insurance benefits and supplemental security income. Based on the court's review of the administrative record and the parties' briefs, the court affirms the Commissioner's decision.

## I.     PROCEDURAL HISTORY

Ms. Mostella applied for a period of disability and disability insurance benefits and supplemental security income on December 19, 2013. (R. 134, 136). Ms. Mostella alleged that her disability began on April 1, 2013. (R. 134, 136). The Commissioner initially denied Ms. Mostella's claims on May 12, 2014. (R. 138-147). Ms. Mostella requested a hearing before an Administrative Law Judge (ALJ). (R.

152). After holding a hearing, the ALJ issued an unfavorable decision on February 25, 2016. (R. 76-93). On March 24, 2017, the Appeals Council declined Ms. Mostella's request for review (R. 1), making the Commissioner's decision final and ripe for the court's judicial review. *See* 42 U.S.C §§ 405(g); 1383(c).

## II. STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court "must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotation marks and citation omitted). "Under the substantial evidence standard, this court will affirm the ALJ's decision if there exists 'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quoting *Winschel*, 631 F.3d at 1178). The court may not "decide the facts anew, reweigh the evidence," or substitute its judgment for that of the ALJ. *Winschel*, 631 F.3d at 1178 (internal quotations and citation omitted). The court must affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1158-59 (11th Cir.2004) (per curiam) (internal quotation marks and citation omitted).

Despite the deferential standard for review of claims, the court must "'scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence.'" *Henry*, 802 F.3d at 1267 (quoting

*MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986)). Moreover, the court must reverse the Commissioner's decision if the ALJ does not apply the correct legal standards. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## III. ALJ'S DECISION

To determine whether an individual is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

Here, the ALJ determined that Ms. Mostella has not engaged in substantial gainful activity since April 1, 2013, the alleged onset date. (R. 78). The ALJ found that Ms. Mostella has the following severe impairments: degenerative disc disease, asthma, narcolepsy, bursitis, depression, history of rotator cuff repair, and osteoarthritis. (R. 78). The ALJ determined that Ms. Mostella has the following non-severe impairments: irritable bowel syndrome, anxiety, and COPD. (R. 84). The ALJ then concluded that Ms. Mostella does not suffer from an impairment or combination of impairments that meets or medically equals the severity of one of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (R. 84).

3

After considering the evidence of record, the ALJ determined that Ms. Mostella has the RFC to perform:

> light, unskilled work not requiring complex instructions or procedures as defined in 20 CFR 404.1567(b) and 416.967(b) with no climbing of ropes, ladders, or scaffolds; no work at unprotected heights or with hazardous machinery; no operating of motor vehicles; no more than occasional overhead reaching with the right upper extremity; no more than occasional stooping, crouching, or crawling; no concentrated exposure to dust, fumes, or other respiratory irritants; no more than frequent interaction with co-workers and supervisors; no more than occasional contact with the general public; and with reasonable access to restroom facilities at the usual and customary breaks with reasonable described as on premises.

(R. 86).

Based on this RFC, the ALJ found that Ms. Mostella cannot perform her past relevant work as an independent cleaner, fast food manager, fork lift operator/truck operator, crane operator, or data entry clerk. (R. 90). Relying on testimony from a vocational expert, the ALJ concluded that jobs exist in the national economy that Ms. Mostella can perform, including marker, router, and assembler. (R. 91). Accordingly, the ALJ determined that Ms. Mostella has not been under a disability as defined in the Social Security Act, since April 1, 2013 through the date of the decision. (R. 92).

## IV. DISCUSSION

Ms. Mostella argues that the court should reverse and remand the Commissioner's decision for two reasons: (1) the ALJ did not properly evaluate the opinion of treating physician Dr. K.J. Shah, and (2) the vocational expert's testimony

on which the ALJ relied is not supported by substantial evidence because the ALJ's hypothetical was incomplete. The court examines each issue in turn.

### A. Weight Assigned to Dr. Shah's Opinion

An ALJ must give the opinion of a treating physician "substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (internal quotation marks and citation omitted). Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* at 1240-41. "With good cause, an ALJ may disregard a treating physician's opinion, but he 'must clearly articulate [the] reasons' for doing so." *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1241; alteration in *Winschel*).

On October 15, 2015, in support of Ms. Mostella's applications for disability benefits, Dr. Shah completed a physical capacities form. (R. 623). Dr. Shah stated that Ms. Mostella's narcolepsy, asthma, and bulging discs in her neck, back, and shoulders cause a number of limitations. For example, Dr. Shah opined that Ms. Mostella can sit upright in a standard chair for less than 30 minutes at a time. (R. 623). He further opined that Ms. Mostella can stand and walk for less than 15 minutes at one time. (R. 623). According to Dr. Shah, in an 8-hour work day, Ms. Mostella

5

must spend five hours lying down, sleeping, or sitting with her legs propped at waist level or above. (R. 623).

The ALJ gave little weight to Dr. Shah's opinion "because these findings are not consistent with the objective medical findings in the record or [Ms. Mostella's] activities of daily living." (R. 89). The ALJ clearly articulated good cause for rejecting Dr. Shah's opinion.

As the ALJ explained, Dr. Shah's opinion is inconsistent with the medical evidence as a whole. For example, no physician recommended that Ms. Mostella lie down for five hours per day. (R. 89). In addition, a November 2015 MRI of Ms. Mostella's cervical spine showed only one lateral bulge at C4/5 with "no additional abnormalities." (R. 635). A December 2015 MRI of Ms. Mostella's right shoulder revealed no evidence of a tear and "mild/moderate arthropathy." (R. 636). From 2013 through 2016, Ms. Mostella had some restricted motion and tenderness in her neck, back, and right shoulder (R. 517, 554, 561, 565, 596, 627, 629), but the majority of Ms. Mostella's physical examinations showed normal or mild neck, musculoskeletal, and neurological findings (R. 517, 520, 523, 526-27, 530, 533-34, 554, 558, 561, 564-65, 568, 587, 590-91, 593, 596, 625, 627, 629).

The ALJ also noted that although Ms. Mostella had received treatment for asthma, two pulmonary function tests in 2014 and 2015 indicated only moderate restriction. (R. 89, 577, 625). Additionally, Ms. Mostella's treatment notes generally showed good airflow and clear or mild chest, lung, and respiratory findings. (R. 463,

554, 558, 561, 565, 568, 573-75, 580, 585, 590, 590, 593, 596, 619, 627, 638, 644-45, 648, 656, 660).

Moreover, the ALJ stated that Ms. Mostella's narcolepsy "improved with treatment" and that she never increased her dosage of medication while receiving treatment. (R. 89). Ms. Mostella suggests that narcolepsy is her most debilitating disease and that Dr. Shah's medical records do not show improvement. (Doc. 11, p. 27). Even if this is so, the record does not demonstrate that narcolepsy significantly limited Ms. Mostella's functioning.

Ms. Mostella first saw Dr. Shah for narcolepsy treatment in 2012. (R. 481). During three office visits with Dr. Shah in 2012, Ms. Mostella complained of falling asleep and feeling sluggish. (R. 481, 468, 467). Ms. Mostella saw Dr. Shah monthly during 2013. (R. 464-466). Medication refills were the purpose of all but one of these visits, and during only one visit with Dr. Shah in 2013 did Ms. Mostella complain of falling asleep. (*Id.*). Out of a number of visits in 2014, she only twice reported narcolepsy symptoms. (R. 466, 578, 574). The ALJ acknowledged that Ms. Mostella received regular treatment for narcolepsy between November 2012 and April 2015. (R. 89). But as the ALJ noted, Dr. Shah never increased Ms. Mostella's Adderall dosage throughout her years of treatment. (R. 89; *see e.g.,* R. 461, 463, 468, 587, 624). During an October 2014 visit with Dr. Kenny Smith, Ms. Mostella reported that she had not experienced narcolepsy symptoms in over a year. (R. 563). Dr. Smith classified Ms. Mostella's narcolepsy as "intermittent" and noted that it had

"improved with medication." (R. 563). In March and April 2015, when Ms. Mostella saw Dr. Shah for Adderall refills, despite "feeling tired or poorly," Ms. Mostella reported that she was feeling better and "doing well." (R. 585, 587). Importantly, Dr. Shah's treatment notes do not contain limitations based on Ms. Mostella's narcolepsy.

In addition to concluding that Dr. Shah's opinion is inconsistent with the objective medical evidence, the ALJ found that Dr. Shah's conclusions are inconsistent with Ms. Mostella's activities of daily living. (R. 89). For instance, the ALJ explained that Ms. Mostella reported that she could care for her two youngers daughters with some assistance from her older daughter, go to the store, attend church weekly, pay bills, and handle a savings account. (R. 87, 89; *see* R. 270, 272-73, 280, 282).

Because good cause existed for discounting Dr. Shah's opinion, substantial evidence supports the ALJ's decision to give the opinion little weight. *See Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("We will not second guess the ALJ about the weight assigned the treating physician's opinion deserves so long as he articulates a special justification for it."); *Crawford*, 363 F.3d at 1159-61 (finding that substantial evidence supported the ALJ's decision to discredit the opinions of the claimant's treating physicians where those physicians' opinions regarding the claimant's disability were inconsistent with the physicians' treatment notes and unsupported by the medical evidence); *Roth v. Astrue*, 249 F. App'x 167, 168 (11th Cir. 2007) (finding that substantial evidence supported the ALJ's

determination that the treating physician's opinion "should not be assigned substantial weight because it was inconsistent with the record as a whole and not supported by the doctor's own medical records").

B. **Vocational Expert Hypothetical**

"When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Phillips*, 357 F.3d at 1240. "In order for a [vocational expert's] testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). But an ALJ is not required to include findings in a hypothetical question that the ALJ properly rejects as unsupported. *Crawford*, 363 F.3d at 1161.

Ms. Mostella argues that the ALJ improperly relied on testimony that a vocational expert gave in response to a hypothetical question that did not include all of her limitations associated with her narcolepsy, particularly her need to lie down for two hours during an 8-hour work day. (Doc. 11, p. 33). The court disagrees.

When questioning the vocational expert during the administrative hearing, the ALJ posed the following hypothetical:

> I'd like you to assume a hypothetical person [the] same age, same education, same past work as the Claimant. We'll assume this person is limited to light, unskilled work not requiring complex instructions or

procedures[,] with no climbing of ropes, ladders, or scaffolds, no work at unprotected heights with hazardous machinery, no operating of motor vehicles, no more than occasional overhead reaching with right upper extremity, occasional stooping, crouching, or crawling, no concentrated exposure to dust, fumes, or other respiratory irritants, with reasonable access to restroom facilities at the usual and customary breaks. And by reasonable I mean on premises. No more than frequent interaction with coworkers and supervisors, occasional contact with the general public.

. . .

Would there be any other jobs that person could perform?

(R. 114-15). In response, the vocational expert testified that the hypothetical person could perform marker, router, and assembler jobs. (R. 115).

The ALJ then asked the vocational expert a second hypothetical:

I'd like you to assume a hypothetical person the same age, same education, same past work as the Claimant with all the same limitations in hypothetical question number one, but with the additional [l]imitation that the person has to have an allowance to lie down for two or more hours during the eight hour workday due to a chronic medical condition. Would that person be able to perform any of the jobs you just listed or any other jobs in the national economy?

(R. 115). In response, the vocational expert answered, "No." (R. 116).

In his decision, the ALJ adopted the vocational expert's testimony with respect to the first hypothetical question and concluded that based on Ms. Mostella's RFC, jobs exist in the national economy that she can perform. (R. 91). Contrary to Ms. Mostella's assertion, the ALJ was not required to credit the vocational expert's testimony regarding the second hypothetical and her alleged need to lie down for two hours in an 8-hour work day.

10

Two pieces of evidence in the record purportedly support this postural limitation. First, Ms. Mostella testified during her hearing that during a typical day, she "mostly [lies] down." (R. 106). Second, Dr. Shah opined that for five hours in a given 8-hour work day, Ms. Mostella must lie down, sleep, or sit with her legs propped. (R. 623). With respect to Ms. Mostella's allegation that she must lie down for most of a work day, the ALJ determined that Ms. Mostella's testimony was not fully consistent with the record evidence. (R. 87-88). Ms. Mostella does not challenge the ALJ's assessment of her subjective complaints. (*See generally* Doc. 11, pp. 33-34). Thus, Ms. Mostella has not demonstrated that the ALJ was required to accept her testimony concerning this alleged limitation. With respect to Dr. Shah's opinion, as explained above, *see supra* pp. 5-9, substantial evidence supports the ALJ's decision to reject Dr. Shah's findings. Therefore, the ALJ did not err in failing to adopt the vocational expert's testimony in response to the second hypothetical that contained limitations that the ALJ found to be unsupported by the record evidence. *See Crawford*, 363 F.3d at 1161;

*Wright v. Comm'r of Soc. Sec.*, 327 F. App'x 135, 137 (11th Cir. 2009) ("[I]f additional impairments asserted by a claimant are not supported by substantial evidence, they do not need to be included in a hypothetical.").

## V. CONCLUSION

For the reasons explained above, the court concludes that the Commissioner's decision is supported by substantial evidence, and the Commissioner applied proper

legal standards in reaching the determination. Therefore, the Court **AFFIRMS** the Commissioner's final decision. The Court will enter a separate order consistent with this memorandum opinion.

    **DONE** and **ORDERED** this August 24, 2018.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE